# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

        v.                          Case No. 25-CR-150

LARRY CANFIELD,

                Defendant.

## ORDER

Pending before the court is defendant Larry Canfield's motion for an evidentiary hearing pursuant to Criminal Local Rule 12(c). (ECF No. 55.)

## 1. Procedural History

The grand jury returned an indictment on August 12, 2025, charging Larry Canfield with possessing a firearm after having been convicted of a felony. (ECF No. 1.) On November 10, 2025, Canfield filed a motion to suppress evidence of the firearm in question and requested an evidentiary hearing. (ECF No. 18.) The court initially denied the request for an evidentiary hearing (ECF No. 22), but upon review of Canfield's motion for reconsideration (ECF No. 24) scheduled an evidentiary hearing to proceed in limited scope. (ECF No. 29.)

On January 6, 2026, the court cancelled the evidentiary hearing because the government agreed to produce additional discovery. (ECF No. 34.) Canfield also withdrew his motion to suppress in light of the continued discovery process. (ECF No. 35.) Discovery continued in a contentious and delayed fashion, involving extensions of time and a motion to compel. (ECF Nos. 37, 46, 47, 48, 50.)

On April 23, 2026, the court held a telephonic scheduling conference and granted Canfield's request for an extension of time until May 15, 2026. (ECF No. 50.) The next day the court clarified in a text only order that the May 15 deadline was for the filing of *all* pretrial motions and reminded the parties that any request for an evidentiary hearing under Criminal Local Rule 12(c) "requires a short, plain statement of the principal legal issues and grounds for relief in support" thereof. (Text Only Order, 04/24/2026.)

On May 15, 2026, Canfield filed a renewed motion for an evidentiary hearing. (ECF No. 55.) At forty-three pages (not counting exhibits), the motion is neither short nor plain. Canfield also requests the court grant him leave to file a motion to suppress *after* holding the requested evidentiary hearing. (*Id.* at 43.) After requesting an extension of time in which to respond, the government filed its opposition on May 26, 2026. (ECF No. 59.) The parties jointly filed a USB with all relevant discovery. (*See* ECF Nos. 62, 64.) The court afforded Canfield several extensions of time to reply, which was finally filed on June 29, 2026. (ECF No. 78.)

## 2. Legal Standard

As the party moving for an evidentiary hearing, Canfield has the burden of establishing the necessity of a hearing by presenting "definite, specific, detailed, and nonconjectural facts" that reveal a disputed issue of material fact. *United States v. Toro*, 359 F.3d 879, 885 (7th Cir. 2004) (quoting *United States v. Rodriguez*, 69 F.3d 136, 141 (7th Cir. 1995)). "A defendant who seeks to suppress evidence bears the burden of making a prima facie showing of illegality" without relying "on vague, conclusory allegations." *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992) (citation omitted). "The general desire to 'put the government to its proof' is not a sufficient reason for holding an evidentiary hearing." *United States v. Arms*, No. 14-CR-78, 2015 WL 3513991, at *24, 2015 U.S. Dist. LEXIS 72503, at *62 (E.D. Wis. June 3, 2015), *report and recommendation adopted,* No. 14-CR-78, 2015 WL 5022640 (E.D. Wis. Aug. 24, 2015).

## 3. Factual Background

To contextualize the request for an evidentiary hearing, the court will summarize the relevant, undisputed facts.

Canfield's indictment is based on a firearm that Milwaukee police officers discovered in the glovebox of his car during execution of a state search warrant. (ECF No. 55 at 24.) The officers obtained the state search warrant after towing Canfield's car in connection with arresting him on February 17, 2025. (*Id.* at 2.) The officers arrested Canfield on the basis of a Milwaukee Police Department database entry dated February

14, 2025, reflecting that he was wanted for a temporary misdemeanor. (*Id.* at 1–2; *see also* ECF No. 62 (copy of wanted person database entry, labelled Supp_000001).)

The temporary misdemeanor "want" was entered after B.R., the mother of two of Canfield's children, called 911 on Friday, February 14, 2025, to report that Canfield brandished a firearm and threatened to "smoke" her before driving away in a white Infiniti. (ECF No. 55 at 8–10.) Officers Matthew Bremer and Michael Kimber were dispatched to B.R.'s house. (*Id.* at 10.) They entered the "wanted person—temporary misdemeanor" notice into a Milwaukee Police Department database on February 14, 2025, and referred two misdemeanor charges to the Milwaukee County District Attorney's office the next day. (*Id.* at 10–11.)

On Monday, February 17, 2025, a District 4 morning briefing provided a short summary of the investigation involving Canfield relating to the February 14, 2025, incident. (ECF No. 55 at 11.) Canfield disputes the measures that District 4 and other officers employed to find him on February 17, 2025, and the court will address those disputes as appropriate herein. There is no dispute that officers arrested Canfield that day at a motel in Greenfield, Wisconsin, towed his car, obtained a state search warrant, and discovered a firearm in the car's glove compartment. (*See* ECF No. 55 at 1–2, 24.)

## 4. Analysis

To begin, the court notes that Canfield's standalone request for an evidentiary hearing is procedurally inappropriate. The court cannot reasonably be expected to

determine whether a disputed issue of material fact exists when there is no suppression or other pretrial motion against which to measure the materiality of a purported dispute. That being said, this case's lengthy history and Canfield's lengthy motion for an evidentiary hearing have allowed the court to understand Canfield's suppression theories and adequately evaluate his request for a hearing.

Canfield states he "will move to suppress evidence obtained from the warrantless search of his phone's location, his warrantless arrest, the warrantless seizure and search of his car, and the subsequent search warrant." (ECF No. 55 at 3.) He also anticipates raising other suppression issues, including whether statements were obtained in violation of *Miranda*, but he states those issues do not require an evidentiary hearing because the statements are fully recorded. (*Id.*)

Canfield contends that an evidentiary hearing is necessary to address: (1) the officers' warrantless use of a cell site simulator to locate him; (2) the officers' warrantless seizure of Canfield's car; (3) the officers' warrantless search of his car; and (4) officer credibility essential to the inevitable discovery and good faith doctrines. (ECF No. 55 at 4–7.) In his reply brief, Canfield re-characterizes the issues to be addressed at an evidentiary hearing as follows:

(1) What officers knew before the arrest, including what reports, calls, briefings, database entries, and other information each officer reviewed.

(2) Whether any officer sought, attempted to seek, or discussed a judicial arrest warrant, and what officers understood the temporary want or database entry to authorize.

(3) How officers located Mr. Canfield at the motel, including the use of E-Time, FLOCK, any cellular location technique, any cell-site simulator, any provider request, any surveillance, and any communication between districts or agencies.

(4) What FLOCK records existed, what the alleged hit showed, why it was not preserved, and what the later audit can and cannot establish.

(5) Why and how the Infiniti was seized and towed, and, relatedly, what officers did in and around the Infiniti before the search warrant issued, including all entries, visual inspections, retrievals, and any observations made.

(ECF No. 78 at 14–15.)

### 4.1. Cell Site Simulator

Canfield argues that the officers must have used an undisclosed tool, most plausibly a cell site simulator, to locate him because the government's account of how officers located him "is factually impossible, technologically inconsistent, and contradicted by government records." (ECF No. 55 at 26–27.)

Canfield argues that the FLOCK[1] search that officers allegedly used to locate him on February 17, 2025, was a parallel investigation intended to cover up their warrantless use of a cell site simulator. (*See generally* ECF No. 55.) Canfield contends that the officers may be intentionally concealing their use of a cell site simulator because a non-disclosure agreement requires the Milwaukee Police Department to withhold information about the technology in litigation and officers are taught to conduct a parallel investigation to

---

[1] FLOCK is a type of automatic license plate reader employed by the Milwaukee Police Department. (*See* ECF No. 46 (court's order on Canfield's motion to compel certain FLOCK records).)

maintain concealment. (ECF No. 55 at 33–42 (citing ECF No. 55-3 (nondisclosure agreement between FBI and Milwaukee Police Department).)

Officers Dustin Langfeldt, Jose Rivera, and Andrew Fuerte conducted FLOCK searches of the license plate registered to Canfield's white Infiniti on the morning of February 17, 2025. (ECF No. 55 at 11–12.) Canfield asserts that these FLOCK searches, followed by Officer Fuerte's sudden search for the plate number *actually* affixed to Canfield's car, demonstrate that Fuerte already knew Canfield's location and was searching for justification after the fact. (*Id.* at 11–13, 29.) He claims there is "no investigative record of any kind that explains how or why Officer Fuerte came to know the [affixed] plate number." (*Id.* at 30.) Canfield acknowledges that Officer Fuerte authored a report about a year after Canfield's arrest stating that he found the plate number by searching Wisconsin's E-Time database, but Canfield points out that discovery reflects that Fuerte searched the E-Time database on February 18, 2025—the day *after* Canfield's arrest. (*Id.*)

The government does not directly respond to Canfield's contention about the E-Time timeline. (*See generally* ECF No. 59.) It states that Captain Phil Simmert, of the

Milwaukee Police Department's Fusion Division,[2] provided an "E-Time print out of all the cars and their registration plates listed to Canfield." (*Id.* at 7.)

Canfield further contends that Officer Fuerte's failure to document, report, and preserve evidence of his FLOCK use on February 17 and 18, 2025, is consistent with a parallel investigation. (ECF No. 55 at 31–32.) The FLOCK use was eventually revealed via the audit requested in discovery and the report that Officer Fuerte authored one year after Canfield's arrest. (*See* ECF No. 62 (copy of Officer Fuerte's report on FLOCK usage, labelled Supp_0000177–78).) The government confirms that Captain Simmert "provided a printout from FLOCK noting their standard retention period is 30 days from the date of capture" and stating that "he can only confirm that searches were made in conducting [a] FLOCK audit." (ECF No. 59 at 7.)

Canfield also argues that the officers' timeline after the FLOCK hit on February 17, 2025, "strains credulity." (ECF No. 55 at 27–28.) He summarizes the sequence as follows: Officers Langfeld, Rivera, and Fuerte searched FLOCK for the plate registered to Canfield's white Infiniti from 8:28 to 9:06 A.M. (*Id.* at 12–13); Fuerte received a FLOCK hit for the affixed license plate at 9:06 A.M. (*Id.* at 13); Fuerte arrived at the location of the FLOCK camera in Greenfield thirty minutes later, at the earliest, given the distance (*Id.* at

---

[2] Canfield explains that "fusion centers" are "state-owned and operated centers that serve as focal points in states and major urban areas for the receipt, analysis, gathering and sharing of threat-related information between State, Local, Tribal and Territorial private sector partners." (ECF No. 55 at 33 (quoting "Fusion Centers," U.S. Dep't of Homeland Security, https://www.dhs.gov/fusion-centers).)

27); the Computer Aided Dispatch ("CAD") record reflects that Fuerte was on scene no later than 10:07 A.M. (*Id.*); the CAD record further reflects that five officers from District 6 arrived at 10:32 and 10:42 A.M. (*Id.* at 28); Officer Rivera reported observing Canfield exit a motel room shortly after 11:00 A.M. (*Id.* at 13); and officers turned on their body cameras at 11:12 A.M. as they entered the parking lot to arrest Canfield (*Id.*). Canfield contends this sequence of events is consistent with officers arriving at a location they already knew rather than using a potentially stale FLOCK capture of a license plate to arrive in an unfamiliar area and identify Canfield's vehicle in a nearby motel parking lot before immediately requesting deployment of five officers from District 6. (*Id.* at 27–28.)

Canfield's theory about law enforcement's use of a cell site simulator is based on speculation and conjecture. He claims there are inconsistencies across the officers' knowledge and reports, but he has failed to establish the materiality of any factual disputes. *See United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007) ("We have emphasized the necessity of materiality in any factual disputes that are presented to the district court as a predicate for an evidentiary hearing.").

Canfield's request for an evidentiary hearing seeks to investigate the officers' understanding of the "wanted" database entry, whether and how they acquired additional information, and whether they sought a judicial arrest warrant. (ECF No. 78 at 14–15.) But Canfield has not identified any constitutionally based suppression issue related to this additional information.

Canfield acknowledges that the arresting officers were aware that he was accused of possessing a firearm as a felon. (ECF No. 78 at 14–15.) Whether officers sought a judicial warrant is irrelevant to Canfield's anticipated motion to suppress based on a warrantless arrest because the "wanted person" entry, otherwise known as a "temporary arrest warrant" or a "temporary want," can provide probable cause for an arrest. *See State v. Burrows*, No. 2018AP770-CR, 2018 WL 6788157, at *5, 2018 Wisc. App. LEXIS 948, at *13 (Wis. Ct. App. Dec. 26, 2018) (observing that "a temporary arrest warrant is merely a tool used by officers to help apprehend a suspect that an officer has probable cause to believe committed a crime"); *see also Woods v. City of Milwaukee*, No. 20-CV-940-SCD, 2022 WL 684945, at *4, 2022 U.S. Dist. LEXIS 40375, at *13–15 (E.D. Wis. Mar. 8, 2022) (finding officers had probable cause to believe the defendant was wanted for burglary and to arrest him based on a "suspect alert").

Canfield also wants to question the officers about how they located him, including their use of E-Time, FLOCK, and any cellular location techniques. But Canfield has not identified a suppression issue related to the use of E-Time or FLOCK. (*See* ECF No. 55 at 20–21 (alleging officers failed to preserve FLOCK records in violation of police department policy); *see also United States v. Wilson*, 169 F.3d 418, 423 (7th Cir. 1999) (holding that federal courts must determine the legality of the search and seizure under federal law, not based on alleged violations of state or local law).) Even if the government's version of events was not precisely or properly preserved, that does not

mean that officers necessarily used unconstitutional means to locate Canfield, and he has not identified a dispute on this point supported by any definite or nonconjectural facts.

Canfield relies on the absence or delay of information to conclude that officers must have used a cell site simulator. But the absence of information is the opposite of definite, specific, detailed, and nonconjectural facts. The government acknowledges that the Milwaukee Police Department has a cell site simulator but states that, before it can be used, an officer "obtains a warrant from the cellular telephone provider requesting the IMSI for the target's cellular phone number. An IMSI number is a unique fifteen digit number that is not the cellphone number and which is obtained from the provider." (ECF No. 59 at 10.) Canfield has not provided any evidence that officers obtained his phone's IMSI number or that a cell site simulator was employed to locate him.

Accordingly, Canfield has not established the need for an evidentiary hearing with respect to how officers located him on the day of his arrest.

### 4.2. Vehicle Seizure

Canfield also requests an evidentiary hearing to address the basis for seizing his vehicle without a warrant. (ECF No. 55 at 5, 22–24.) But, again, Canfield does not identify where the dispute of material fact lies. He claims the officers lacked supervisor authorization and documentation to seize his vehicle as an "evidence tow" and that his vehicle was not towed as "prisoner property." (ECF No. 55 at 22–24.) The government acknowledges that a documentary discrepancy exists. (ECF No. 59 at 6 (acknowledging

that "[r]eports and the CAD both reflect this was an evidence tow, but the tow authorization report reflects it as a prisoner property tow").) But it contends that officers were justified in seizing the vehicle because they had probable cause to believe a firearm involved in a criminal offense three days prior would be located inside. (ECF No. 59 at 13.)

"The decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots." *United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996). The decision to impound a vehicle is properly analyzed as distinct from the decision to search the vehicle. *See id.* at 351.

Canfield maintains that an evidentiary hearing is needed to address "why officers seized the car, who authorized the tow, what information was available to the decision-maker, what standardized procedures governed the decision, whether the stated basis for seizure was caretaking, evidence preservation, prisoner property, probable cause, or inventory, and what officers actually did before the warrant was issued." (ECF No. 78 at 10.)

But Canfield has not explained why these circumstances are material when objective facts provided probable cause to believe that a firearm involved in a criminal offense would be located inside the vehicle. *See United States v. Ross*, 456 U.S. 798, 808 (1982) ("[T]he probable-cause determination must be based on objective facts that could

justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers."). Those objective facts, on which Canfield has not established a genuine dispute, include officers' knowledge that he was wanted for being a felon in possession of a firearm for allegedly pointing a weapon at a victim three days prior, that the search of Canfield and his motel room revealed no firearm, and that Canfield was living out of his vehicle. (*See* ECF No. 55 at 11–12 (acknowledging that a District 4 morning briefing provided Canfield's name, a description of his priors, and a description of the victim's complaint); *see also id.* at 24 (acknowledging that officers learned Canfield and his girlfriend were living out of the vehicle).)

Accordingly, Canfield has not established the need for an evidentiary hearing with respect to the warrantless seizure of his vehicle.

### 4.3. Vehicle Search

Canfield contends that an evidentiary hearing is necessary to determine whether officers conducted a warrantless search of his vehicle before obtaining the state search warrant. (ECF No. 55 at 5.) He points out that officers booked him for possession of a firearm as a felon and possession of methamphetamine hours before officers searched his vehicle pursuant to a warrant and discovered a firearm and a substance suspected of being MDMA in the glovebox. (*Id.* at 24; *see also* ECF No. 62 (copy of report reflecting firearm and MDMA discovered during search at 3:23 P.M. on 2/17/25, labelled Canfield_000042, and copy of booking summary reflecting charges for possession of

firearm and methamphetamine at 11:13 A.M. on 2/17/25, labelled Supp_000104–05).) The government does not respond to Canfield's contention about the charges being booked prior to the search.

Even if officers conducted a warrantless search of Canfield's vehicle, "[t]he doctrine of inevitable discovery provides that illegally obtained evidence will not be excluded if the Government can prove, by a preponderance of the evidence, that the officers 'ultimately or inevitably would have ... discovered [the challenged evidence] by lawful means.'" *United States v. Marrocco*, 578 F.3d 627, 637 (7th Cir. 2009). "To satisfy this burden, the Government must demonstrate … that it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence … [and] that it would have conducted a lawful search absent the challenged conduct." *Id.*

There is no question here that officers had an independent legal justification for the search and would have conducted a lawful search. They obtained a state search warrant to search the vehicle. Canfield has not identified any basis by which the alleged premature search infected the issued search warrant or its application.

Accordingly, Canfield has not articulated any material disputes of fact that need to be resolved at an evidentiary hearing with respect to the search of his vehicle.

14

5. **Conclusion**

Because Canfield has not established any dispute of *material* fact, he has not met his burden of demonstrating that an evidentiary hearing is necessary.

**IT IS THEREFORE ORDERED** that Canfield's request for an evidentiary hearing (ECF No. 55) is **DENIED**.

The court finds that the deadline for filing pretrial motions should be extended one **final** time. The court finds under 18 U.S.C. § 3161(h)(7)(A) and (B)(iv) that the ends of justice served by taking this action outweigh the best interest of the public and the defendant in a speedy trial. The court makes this finding because, taking into account the exercise of due diligence, the failure to grant such a continuance would deny counsel for the defendant or the attorney for the Government reasonable time necessary for effective preparation. Accordingly, all pretrial motions are due **no later than July 21, 2026**. Responses are due no later than **July 31, 2026**. Any reply is due no later than **August 5, 2026**. The period from today until July 21, 2026, is excluded under the Speedy Trial Act.

Dated at Milwaukee, Wisconsin this 7th day of July, 2026.

WILLIAM E. DUFFIN
U.S. Magistrate Judge

15